**Stephen R. STEINBERG, individually and on behalf of a class of policyholders and members of Nationwide Mutual Insurance Company and derivatively on behalf of Nationwide Mutual Insurance Company, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Richard D. Crabtree, Gordon E. McCutcheon, and such other "Doe" defendants employed by Nationwide who participated or allowed the acts herein alleged, whose identities are presently unknown, Defendants.**

**No. 99CV7725(ADS).**

United States District Court,
E.D. New York.

April 6, 2000.

Stephen R. Steinberg, Southampton, NY, for Plaintiff pro se.

Hodgson, Russ, Andrews, Woods & Goodyear LLP, New York City, by Michael P. Murphy, Kevin M. Kearney, Elizabeth Dailey McManus, of counsel, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On October 13, 1999, the plaintiff Stephen R. Steinberg, Esq. (the "plaintiff" or "Steinberg"), commenced this action in New York Supreme Court, Suffolk County (Index No. 99–23926). On November 24, 1999, pursuant to 28 U.S.C. §§ 1441 and 1446, Nationwide Mutual Insurance Company ("Nationwide"), Richard D. Crabtree ("Crabtree"), and Gordon E. McCutcheon ("McCutcheon") (collectively, the "defendants") jointly filed a petition of removal to this Court. Presently before the Court is the plaintiff's motion to remand the case to the New York Supreme Court, Suffolk County.

## I. BACKGROUND

The facts set forth below are taken from the plaintiff's complaint. On an unspecified date, Nationwide sold to the plaintiff a contract for automobile insurance for his leased 1999 BMW 740I, which provided: "COMPREHENSIVE COVERAGE. WE will pay for loss to your auto not caused by collision or upset. We will pay for the loss less your declared deductible." In September 1999, the plaintiff's BMW engine was damaged by water that was caused by flooding conditions in Bridgehampton, New York. On behalf of Nationwide, an adjuster consented to the replacement of the engine and agreed to pay the repairing dealer (the selling dealer of the car) ap-

proximately $10,400 for replacement of the engine block.

Nationwide confirmed the agreement it had made with the selling dealer by sending the plaintiff a document which indicated that it had agreed to replacement of the BMW engine block for a total payment of more than $14,000 to the dealer. Nationwide applied the insurance contract's deductible of $1,000 and then also deducted a "betterment" charge claiming that because the vehicle had approximately 10,000 miles on it and they had agreed to the installation of a new engine, the plaintiff was responsible for the increase in value of the vehicle as a result of the installation of a new engine in a car with almost 10,000 miles of use.

The plaintiff alleges that Nationwide misled him into believing that he was obtaining a new engine, when in fact, it was remanufactured. A remanufactured engine is a previously used engine which is remanufactured by BMW in Germany. After obtaining possession of the vehicle from the repairer-dealer and paying the deductible and betterment charges, the plaintiff learned that a remanufactured engine had been installed at Nationwide's request.

The plaintiff contends that it is Nationwide's course of conduct to arrange with repairers to install used or remanufactured parts without first advising its insureds. As a result, the plaintiff contends that Nationwide is saving millions of dollars annually, while it is simultaneously collecting premiums and charging "betterment" charges. The plaintiff alleges that he has been damaged in the sum of at least $15,-000. As a result of this conduct, the plaintiff's complaint seeks damages for each member of the class who have incurred "betterment" charges for remanufacured parts. In addition, the complaint seeks an order enjoining Nationwide from continuing the practice of using remanufactured parts and imposing "betterment" charges on its insureds.

It should be noted that the plaintiff's reply memorandum of law indicates that he has voluntarily withdrawn his "derivative claim" and discontinued the action against the individual defendants.

## II. DISCUSSION

### A. *Motion To Remand*

A cause of action that was originally filed in the state court may be removed by the defendant where "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In order to remove a case from state to federal court the notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). There is no contention that the defendants failed to properly comply with Section 1446.

■ While Sections 1441 and 1446 permit removal to the federal courts in certain circumstances, 28 U.S.C. § 1447(c) "authorizes a remand on the basis of any defect in removal procedure or because the district court lacks subject matter jurisdiction." *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir.1994)(internal quotations and citations omitted).

■ "There are several well-established principles governing the propriety of removal petitions under Section 1446, which the court must keep in mind . . . ." *Town of Moreau, et al. v. New York State Dept. of Environmental Conservation, et al.*, 96 Civ. 983, 1997 WL 243258, at *1 (N.D.N.Y. 1997) (internal quotations and citation omitted). First, "[r]emoval jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F.Supp. 174, 178 (S.D.N.Y. 1996) (citing *Shamrock Oil & Gas Corp. v.*

*Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 [1941]) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *State of New York v. Lutheran Center for the Aging, Inc.,* 957 F.Supp. 393, 397 (E.D.N.Y. 1997) ("Removal statutes are to be strictly construed[.]"). Thus, "all doubts should be resolved in favor of remand." *Leslie v. BancTec Service Corp.,* 928 F.Supp. 341, 347 (S.D.N.Y.1996) (internal quotations and citations omitted); *see also Boyer v. Snap–On Tools Corp.,* 913 F.2d 108 (3d Cir.1990) *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Town of Moreau,* 96 Civ. 983, 1997 WL 243258, at *1 (citing *Leslie,* 928 F.Supp. at 347).

■ "[T]he burden is on the removing party to prove that it has met the requirements for removal." *Avon Products, Inc. v. The A/J Partnership,* 89 Civ. 3743/8032, 1990 WL 422416, at *1 (S.D.N.Y. March 1, 1990); *Lutheran Center for the Aging,* 957 F.Supp. at 397; *NASDAQ Market Makers,* 929 F.Supp. at 178; *Fisher v. Building Services,* 96 Civ. 4317, 1997 WL 590843, *2 (S.D.N.Y. Sept.22, 1997).

The defendants' notice of removal contends that there is diversity of citizenship and that the claims of the plaintiffs are greater than $75,000. As there is no issue of diversity as the plaintiff is a New York resident and Nationwide was incorporated and has its principal place of business in Ohio, the Court's analysis will focus on whether the $75,000 jurisdictional amount has been met.

28 U.S.C. § 1332(a)(1) states, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." In 1911, the Supreme Court stated that "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy

in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . ." *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911). Years later, in *Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511, the Supreme Court stated that:

> [t]his distinction and rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts were firmly rooted in prior cases dating from 1832, and have continued to be the accepted construction of the controlling statutes, now §§ 1331 and 1332. The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional amount . . . .

In *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418, 1422 (2d Cir.1997), the Second Circuit stated that the claims of several plaintiffs against a common defendant can only be aggregated where "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest . . . ." *Id.* (quoting *Troy Bank,* 222 U.S. at 40–41, 32 S.Ct. 9). Such "common fund" cases typically involve "a common interest arising under a single title or right and are matters that cannot be adjudicated without implicating the rights of everyone involved with the · res." *Greenberg v. Trace Nat'l Holdings, Inc.,* 99 CV 306, 1999 WL 587935 (S.D.N.Y. Aug.4, 1999) (quoting *Gilman,* 104 F.3d at 1423) (internal quotation marks and other citations omitted).

■ The defendants have failed to meet their burden of demonstrating that the plaintiffs claims can be aggregated in order to meet the $75,000 threshold of 28 U.S.C. § 1332(a). If successful, each member of the class would be entitled to damages based upon their individual breach of contract and the specific loss incurred as a result of the betterment charges that were paid or incurred. As

such, the Court will not aggregate the potential value of the class in order to sustain the $75,000 jurisdictional amount.

■ This finding, however, does not end the Court's analysis as the defendants also argue that the injunctive relief sought by the plaintiffs furnishes the basis for federal jurisdiction In *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87–88 (2d Cir. 1991), the Second Circuit stated that "[w]here the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction. In calculating the impairment, the court may look not only at past losses but also at potential harm." *Id.* (citing 1 Moore's Federal Practice ¶ 0.96[2] (2d ed.1991); 14A Charles A. Wright & Arthur R. Miller § 3708, at 143–44). The affidavit of Nationwide's National Claims Counsel, Thomas C. Meloy, Esq., confirms that an order prohibiting the practice of recognizing "betterment" charges and the use of remanufactured parts would have an economic impact exceeding $75,000. In fact, the plaintiff's complaint itself states that Nationwide is saving "millions of dollars annually" by using remanufacured parts and imposing "betterment" charges. The Court finds that, with reasonable certainty, the imposition of an injunction would cause economic harm in excess of $75,000 to the defendant. As such, the Court finds that the plaintiff's request for injunctive relief meets the jurisdictional minimum of $75,000.

## III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED**, that the plaintiffs' derivative cause of action and the claims against the individual defendants are deemed **WITHDRAWN**; and it is further

**ORDERED**, that the plaintiffs' motion to remand this case to the New York Supreme Court, Suffolk County is **DENIED**; and it is further

**ORDERED**, that upon receipt of this Order, the parties are to contact United States Magistrate Judge Arlene R. Lindsay to set a discovery schedule; and it is further

**ORDERED**, that the Clerk of the Court shall amend the caption to read as follows:

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

STEPHEN R. STEINBERG, individually and on behalf of a class of policyholders and members of Nationwide Mutual Insurance Company, Plaintiffs,

against

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

**SO ORDERED.**